Judge Marshall
delivered the opinion of the Court. The Chief Justice did not sit in this case.
This is a writ of error prosecuted by John Kennedy, to reverse a decree dissolving the partnership between himself and Thomas Kennedy, on the prayer of the latter.
The partnership was entered into in November, 1830, for the purpose of raising, purchasing and selling cattle and hogs, and to continue for ten years. It went into active operation in 1831, and in January, 1832, the bill for a dissolution was filed.
Two only of the grounds alleged in the bill, need be noticed. First — John Kennedy is charged with improperly taking from the desk of the complainant, in his absence, the sum of twenty one hundred dollars — a part of the proceeds of the first sale of hogs, which was deposited with the complainant for safe keeping, and which *240 the defendant refused to restore. And second — he is charged with exclusively possessing and controlling the whole of the partnership effects, refusing to pay the complainant any portion of the proceeds of the farm and labor furnished by him, or of his capital laid out in the purchase of stock, or to make a fair settlement thereof; and insisting that no division is to be made of the profits till the end of the ten years.
A partnership contract may be annulled,mchaneery, before the tme fixed ftn^its duration, when which itPwas entered into, can ved--as”SwhCTe one partner acts Sudratheother from his prop-business, $-c.
One partner, upces fse1zeTnpon the partnership tody'o^the other! and holds with shm'of using it accord^ng^to his the agreement, when they are m. a dispute upon that point, and partnmCfimnany share in the dibusiness of the firm:_ such consistent with »ood faith, and justia dissolution.
The power of annulling contracts of partnership, is one 0p a very delicate character. But it is often neces- , , sary for the salety of one or more of the partners; and ^ exercised upon, definite principles, and restrained within established limits, is among the most salutary with which the Chancellor is invested. The general principle is, that the contract may be annulled when the purposes f°r which it was entered into can no longer be served, Watson on Partnership, 382. And among the special grounds which justify a decree of dissolution, are the following, enumerated by Chancellor Kent, 3 Kent’s Com. 60: First — a gross abuse of good faith between the parties; or second — such conduct in one partner as amounts to an exclusion of the other from his proper agency in the business of the firm. On one or both of these grounds, if at all, the decree in the present case is to be sustained. The facts on which the two charges in the bill are grounded, are admitted, or proved substantially as alleged. It is due, however, to the defendant, to state, that the money was not taken for his own separate use, and that it has probably been appropriated to the business of the firm. But it was taken in the absence 0f |]ie complainant, and within a few hours after there 1 7 . had been a serious and still unsettled dispute between the Pai'ties? in regard to the proper construction of the articles of association. The key of the desk was obtained from the complainant’s son, to whose charge it had been committed, for a different purpose, as alleged, and the money was taken without his Imowledge, and without any suggestion by the defendant, at the time, that he thought it unsafe, or that he intended taking it, or that he had done so. Afterwards, indeed, he made no secret of having taken it, and justified himself in con *241 versation, as he has done in his answer, by saying, that being about the house, he saw the money, and thinking it unsafe where it was, therefore took it. But. there is no proof that it was in fact unsafe, or that there was any just ground for thinking it so.
^cdi™ entitled to directand control the operations of the firm — unless their agreement, or some peculiar circumstance shows a different intention — which cannot he inferred from stipulations, that one is to furnish capital, and the ether personal services.
If this transaction had occurred while that mutual confidence subsisted between the parties, which should characterize the relation of partners, and if the defendant had afterwards made the future custody and use of the money the subject of friendly consultation, although the manner of taking it might not, even then, have been free from impropriety, it could not have furnished ground for complaining to a Court of Equity. But the existing dispute between the parties, and the subsequent conduct of the defendant, constrains us to believe, that he seized the opportunity of improperly possessing himself of the money, in order to exclude his partner from any control over it, and to take to himself the exclusive determination of the question how much money should be devoted to the purchase of stock, or other articles, for the ensuing year, and whether there should be any division of the current profits of the business.
Under this view of the subject, we consider the defendant as having been guilty of a breach of good faith, by which the rights and interests of his partner have been seriously affected. It is said, however, that the complainant was not entitled to the money. But he certainly was entitled to its custody, by the agreement of the defendant, and he was entitled to a voice in settling the terms on which he was to part with it. The defendant has not only deprived him of these rights in an improper manner; but the possession of the money thus acquired, has enabled him to accomplish the purpose of excluding the complainant from any control over the monied operations of the firm; and he has done so.
The question therefore arises, whether, by the articles of partnership, the complainant is entitled to any agency or control in this matter. We think he is, for the following reasons. — The agreement provides for the equal *242 contribution of various specified articles by each party. Among other things, the complainant is to furnish certain designated tracts of land; and the defendant is to devote his personal attention to the buying and selling and feeding of stock, to the cultivation of the land, and to the laborers employed. But the undertaking of the defendant to devote his attention to the business, does not, as is contended for him, deprive the complainant of his right, as a partner, to an equal control in directing its general operations. This equality is implied in every partnership, unless there be some provision in the agreement, or some special circumstance attending the association indicating a different intention. And the mere fact, that one party is to give his time and personal attention to the transaction of the business, as an equivalent to the contribution of property by the other, is not, of itself, sufficient to show, that the latter intends to to divest himself entirely of the influence and agency to which his equal contribution entitles him. It will not be presumed, that a party intends to subject his interests to the exclusive control of another, -without the power of interposition on his part.
Where the articles of association do not prescribe the operations, they must be determined upon by the concurrent will of the partners, or a majority ofthem; and tho’their disagreement may limit, or entirely stop, the business, that is no ground for the interference of the Chancellor. He may restrain a partner from continued breaches of his contract, or, in a proper case, dissolve the partnership; but cannot aid imcarrying it on.
From this equal right of control, it results, that whatever is left undetermined by the articles of association, is to be determined by the will of the partners; and that where there are but two, it must be determined by their concurrent will. If a consequence of this position would be, that, under certain circumstances, the business of the firm might be unprofitable, or might altogether cease, from a want of concurrence in the will of the partners, the possibility of such a consequence only shows the necessity of providing against it in the articles of association. A Court of Equity may restrain a partner from the continued breach of an important covenant (3 Kent’s Com. 60); or it may, under certain circumstances, dissolve the association itself. But it cannot supply a provision which is neither expressed nor implied in the agreement of the parties. And it is not a matter of such transcendent importance and necessity, that the business of the firm should be conducted in the most profitable manner, or that it should proceed at all, *243 as to authorize or induce a Court of Equity, in order to insure either of these objects, to subject the will of one party to that of another, in a matter in which he has not agreed to be subject. If the articles of association, are so defective as not to provide, with certainty, for for the progress of the business which is undertaken, and the parties cannot by agreement cure the defect, the business must fail. A Chancellor may interpose to have justice done in winding up the concern,, but he has no power to carry it on.
Where, by tha “certain capital is^to be hag a rjght to withdraw any part of it. Not so, where the articles are silent in that respect; then, whether it shall remain as it is, or a part be withdrawn, mnst depend on consent. So, also,, as to whether the profits shall accumulate, or be divided. And where the agreement is, that the partnership shall endure for a definite period, but nothing is said as to the profits,, it doesnot follow that they are to accumulate to the end of the term; but rather, that they are to be divided, as ustal, from time to time; or,at least, as the parties may agree.
In the present case, the articles of association provide, that the parties “are to furnish an equal portion of the funds necessary to carry on the business of the firm, and an equal portion of all other expenses that they may think it necessary to incur, and are to be equally interested in all the profits arising from the sale of their stock.” Had the amount of funds to be used in carrying on the business, been fixed, by the articles, although in that case neither party could have withdrawn, at his will, any portion of that amount from the common use, yet, it would not have followed that the annual profits were, also, to be used in the business, and thus to accumulate as capital to the end of the term. An intention, that.the profits should thus accumulate, without any intermediate partition, or separate use of them by the individual part, ners, being contrary to general usa^e, and to one of the principal objects for which partnerships in active business are commonly formed, is not to be presumed from the mere omission to provide for an intermediate partition. On the contrary, the natural inference, from the omission to provide, either that the profits shall accumulate, or that they shall be periodically divided, or used currently for private purposes, is that they may be so used; or, at least, that the question, whether they shall accumulate, orbe taken from the firm by the partners, is to be determined by them.
In the present case, the articles of association do not even fix the sum to be used in the business of the firm; but leave it to be determined by the concurrent will or judgment of the partners; and as the appropriation by them, of a particular sum for the first year, or for the *244 first transactions of the firm, does not, in our opinion, amount to a permanent appropriation of the same sum to the use of the firm in future years or future transactions, and much less to a permanent appropriation of the profits arising from it; it follows, that the question as to the amount of funds to be used in any year, or in' any transaction, is, as between the partners, left open during the whole term of the partnership, to be determined by mutual agreement, in which, the will or judgment of one party is entitled to the same weight as that of the other. And this question includes, not only the disposition of the profits, but of the principal sum which may have been advanced by the partners on any occasion, and returned by the ordinary sales of the firm. It is evident, therefore, that the mere possession of the entire proceeds of the first year’s operations, if the defendant had acquired it properly, as the salesman of the firm, would not have authorized him to exclude his partner from all voice in determining what amount should be used in their common business, and in what manner. And he certainly did not gain the right of doing so, by the manner in which he took the money. We are satisfied, therefore, that in assuming the exclusive determination of this question, and the exclusive control and direction of the whole- business, the defendant has wrongfully ousted his partner from his proper agency in the operations of the firm; and this was effected by means of his possession of the funds of the partnership, which he acquired by a breach of good faith. Without deciding the exact weight to which either of these acts, taken separately, might be entitled, on the question of a dissolution of the partnership, we think that, when taken together, they amount to sufficient cause, under the principles first stated, for annulling the contract, and depriving the defendant of further control over the property and interests of the complainant. The attitude in which the defendant’s conduct has placed the partnership affairs, justifies this conclusion, as it regards the present case, and demonstrates the correctness of the principles on which it is founded. The defendant occupies the land furnished by the complainant, for the common use, and appro *245 priates at his will the issues arising from its cultivation; he directs the labor of the slaves &c. furnished equally by both; he has the possession of the cattle and other stock, purchased or raised at the common expense; he takes the custody and controls the use of all the proceeds of purchases and sales made for the common benefit; and while he is in the constant enjoyment of all the incidental advantages to be derived from these circumstances, he claims to exclude his partner from any participation, not only in the management, but in the profits of the concern, until the end of ten years. In the mean time, by refusing to make any settlement, and by failing, even in his answer in this suit, to make any statement of the transactions and condition of the firm, he, in effect, takes the power of making such settlement as he pleases at the end of the term. If all these powers and advantages had been secured exclusively to the defendant, by the articles of association, the complainant would have been bound to submit, at least until he could show some flagrant mismanagement or dangerous misuse of them. But as the defendant has seized upon them wrongfully, and has already committed a breach of faith by which he was enabled to do so, the complainant is entitled to be immediately released from so unequal and dangerous an association.
Wherefore, as there was no error in decreeing a dissolution of the partnership, the decree, to that extent, is affirmed. We do not consider any other portion of it as properly before this Court for revision.